UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JEFFREY D. DYKES,

                    Plaintiff,

          v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                    Defendant.

CASE NO. C16-5649-MAT

ORDER  RE: SOCIAL SECURITY
DISABILITY APPEAL

Plaintiff Jeffrey Dykes proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner).  The Commissioner denied plaintiff's application for Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda, this matter is REMANDED for further proceedings.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1966.[1] He reached the tenth grade of high school, attending special education classes, did not obtain his GED, and worked in a variety of different jobs.  (AR 36-37, 71-72, 584-86.)

---

[1] Dates of birth must be redacted to the year.  Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

Plaintiff protectively filed his SSI application on October 5, 2009, alleging disability as of October 1, 2001. (AR 154.) The application was denied initially and on reconsideration.

On June 16, 2011, ALJ Catherine Lazuran held a hearing, taking testimony from plaintiff and a vocational expert (VE). (AR 31-81.) In a decision dated August 26, 2011, ALJ Lazuran denied plaintiff's claim. (AR 604-13.) Plaintiff timely appealed and the Appeals Council denied review (AR 619), making the ALJ's decision the final decision of the Commissioner.

Plaintiff requested review in this Court and the parties stipulated to a remand. (AR 624-41.) The Appeals Council vacated the decision and remanded to an ALJ. (AR 643-45.) Among other issues identified, the Appeals Council indicated any evidence relied on from any prior claim(s) for disability benefits must be made part of the record and proffered to the claimant.[2]

ALJ Jo Hoenninger held a hearing on January 22, 2015, taking testimony from plaintiff. (AR 892-949.) In another hearing on October 29, 2015, the ALJ took testimony from a VE. (AR 580-600.) ALJ Hoenninger, in a decision dated December 10, 2015, concluded plaintiff had not been under a disability since the October 5, 2009 application date. (AR 503-24.) *See* 20 C.F.R. § 416.335 (SSI is not payable prior to the month following the month of the application).)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on May 18, 2016 (AR 486-88), and plaintiff appealed to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must

---

[2] A previous SSI claim was denied in January 2007 and is administratively final. (AR 504.)

be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the October 5, 2009 application date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found severe plaintiff's degenerative disc disease with lumbar strain, chronic obstructive pulmonary disease (COPD), and major depressive disorder with psychotic features. Step three asks whether a claimant's impairments meet or equal the criteria of a listed impairment. The ALJ found plaintiff's impairments did not meet or equal a listing.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform medium work, with the following limitations: lift, carry, push, and/or pull up to thirty pounds occasionally and up to twenty pounds frequently; stand and/or walk one hour at a time, up to five hours total in an eight-hour workday; sit without limitation; frequently stoop, kneel, crouch, and crawl; understand and remember simple, but not detailed instructions; sufficient concentration, persistence, and pace to complete simple, routine tasks in two-hour increments for normal workday and workweek; would likely need additional supervision and encouragement during the first few weeks of a job, but not thereafter; and should not work around the general public, but can work around a small number of coworkers. The ALJ found insufficient information to make a finding about past relevant work at step four.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the VE, the ALJ found plaintiff capable of performing other jobs,

such as work as a laboratory helper, hand packer, auto detailer, recycler/reclaimer, and price marker.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in relying on evidence not in the record, in evaluating medical opinions and his testimony, in assessing the RFC, and at step five. He requests remand for further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

<u>Medical Opinions</u>

Plaintiff challenges the ALJ's assessment of numerous medical opinions. Social Security regulations distinguish between the different types of sources offering medical opinions. "Acceptable medical sources" include, for example, licensed physicians and psychologists, while other non-specified medical providers, such as nurse practitioners or therapists, are considered "other sources." 20 C.F.R. §§ 416.902, 416.913, and Social Security Ruling (SSR) 06-03p

(rescinded effective March 27, 2017).[3]

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). The record in this case contained contradictory physician opinions. The ALJ could reject the contradicted opinion of a treating or examining physician only with "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The record also contained opinion evidence from other sources. The ALJ could assign less weight to the opinions of other sources, *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996), and discount the evidence by providing reasons germane to each source, *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (cited sources omitted).

A.  Dr. Donna Johns

Dr. Donna Johns conducted a psychological examination in June 2009. Dr. Johns assessed a Global Assessment of Functioning (GAF) score of 35,[4] marked impairment in social functions, and moderate impairment in day-to-day activities/concentration, persistence, and pace. (AR 268.)

The ALJ gave little weight to this opinion. She stated Dr. Johns "explicitly based" the

---

[3] New regulations, effective for claims filed after March 27, 2017, include advanced practice registered nurses, audiologists, and physician assistants as "acceptable medical sources," other licensed heath care workers as "medical sources," and other sources of evidence as "nonmedical sources." 20 C.F.R. § 416.902(a), (d), (e).

[4] A GAF score between: 21 and 30 describes behavior "considerably influenced by delusions and hallucinations," "serious impairment in communication or judgment," or "inability to function in almost all areas"; 31 and 40 describes "[s]ome impairment in reality testing or communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood"; 41 and 50 describes "serious symptoms" or "any serious impairment in social, occupational, or school functioning"; 51 and 60 describes "moderate symptoms" or "moderate difficulty in social, occupational, or school functioning"; and 61 and 70 describes "[s]ome mild symptoms" or "some difficulty in social, occupational, or school functioning . . . , but generally functioning pretty well, has some meaningful interpersonal relationships." Diagnostic and Statistical Manual of Mental Disorders at 34 (4th ed. 2000) (DSM-IV-TR). This explanation should be referred to whenever GAF scores are referenced in this Order.

GAF on a factor – plaintiff's "economic situation" – having no bearing on the disability analysis. (AR 516.) Overall, the opinion appeared to be based on plaintiff's self-reports and presentation, and plaintiff was not a credible historian. Notably, when examined by Dr. Donald Ramsthel that same month, plaintiff presented with no memory, tracking, or understanding deficits.

Plaintiff notes Dr. Johns identified "economic problems" under "Axis IV", not the GAF score at "Axis V." (AR 269.) The Commissioner observes that GAF scores nonetheless include consideration of factors not relevant to the disability analysis, such as the death of a family member or inadequate finances.[5]

"Axis IV [of the Multiaxial Assessment system] is for reporting psychosocial and environmental problems that may affect diagnosis, treatment, and prognosis of mental disorders (Axes 1 and II)." Diagnostic and Statistical Manual of Mental Disorders 31 (4th ed. 2000) (DSM-IV-TR). "A psychosocial or environmental problem may be a negative life event, an environmental difficulty or deficiency, a familial or other interpersonal stress, an inadequacy of support or personal resources, or other problems relating to the context in which a person's difficulties have developed." *Id*. Axis V, the GAF scale, "is for reporting the clinician's judgment of the individual's overall level of functioning." *Id*. at 32. "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998). It is based on either an individual's symptoms or his functional impairments, whichever is lower. DSM-IV-TR at 32-33. Axis V calls for a rating "with respect to only psychological, social, and occupational

---

[5] The Commissioner also points to a decision of this Court as holding a GAF score contains "'no specific functional limitations,' such that an ALJ commits no error by failing to mention the score at all." (Dkt. 27 at 4 (citing *Guzman v. Colvin*, No. C16-5349-BAT (Dkt. 20 at 8 (finding no error in failure to mention GAF scores where ALJ discussed the assessing physician's observations and claimant's reporting to physician, and claimant identified no specific functional limitations omitted)).) In this case, the ALJ did address the GAF scores in the record.

functioning", and evaluators are not to include "'impairment in functioning due to physical (or environmental) limitations.'" *Id*. at 32.

Dr. Johns could have considered plaintiff's economic or other problems at Axis V. However, because she provided no explanation for the GAF score (*see* AR 269 ("Axis V: GAF=35")), she did not "explicitly" base it on a factor having no bearing on the disability analysis. In any event, and as discussed below, the ALJ elsewhere in the decision provided specific and legitimate reasons for declining to assign value to any GAF scores in the record.

The most recent version of the DSM does not include a GAF rating for the assessment of mental disorders. DSM-V at 16-17 (5th ed. 2013). While the Social Security Administration (SSA) continues to receive and consider GAF scores from "acceptable medical sources" as opinion evidence, a GAF score cannot alone be used to "raise" or "lower" someone's level of function, and provides "only a snapshot opinion." Administrative Message 13066 ("AM-13066"). Unless the reasons behind the rating and the applicable time period are clearly explained, a GAF score does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis. *Id*.

Here, consistent with AM-13066, the ALJ described the GAF scores in the record as highly subjective ratings, varying from one practitioner to another, providing a snapshot on the day of the assessment, unable to alone predict whether a claimant has the ability to sustain employment, and of limited utility in the disability assessment. (AR 521.) The ALJ noted many of the scores ranged between 51 and 60, reflecting only moderate symptoms or difficulties, and that, in 2015, consultative psychological examiner Dr. Todd Bowerly assessed a GAF of 65,[6] reflecting only mild symptoms or difficulty. The ALJ reasonably found the variations in GAF scores over time

---

[6] The ALJ misidentified this score as 68. (*See* AR 521, 845.)

"appears to be related to the presentation of the claimant at any given assessment and is highly dependent on the claimant's self-reports of functioning." (*Id*.)

The ALJ also properly considered inconsistency in plaintiff's presentation to Drs. Johns and Ramsthel. *See Morgan v. Commissioner of the SSA*, 169 F.3d 595, 603 (9th Cir. 1999) (ALJ appropriately considers inconsistencies between physicians' reports). Plaintiff rejects this reasoning given that Dr. Ramsthel assessed his physical impairments and is not a psychiatrist. However, whatever his area of expertise, it remains that Dr. Ramsthel observed normal behavior, memory, tracking, and conversational understanding only a week after plaintiff presented as impaired in these same areas in a psychological evaluation. (AR 267-68, 282.)

The remaining question is whether the ALJ reasonably concluded Dr. Johns based her opinion on plaintiff's self-reports and presentation. An ALJ may reject a physician's opinion if based "'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Morgan*, 169 F.3d at 602). "However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162-63 (9th Cir. 2014) (ALJ "offered no basis" for conclusion medical opinions were based more heavily on self-reports where letter and evaluation discussed treating providers' "observations, diagnoses, and prescriptions, in addition to . . . self-reports.")

Dr. Johns' report provides some support for the ALJ's conclusion. She assessed marked impairment in social functioning "as evidenced by isolative behaviors that exclude family members and only has one friend which is his girlfriend with whom he lives." (AR 268.) She pointed to reported constant auditory hallucinations as the primary cause of plaintiff's inability to engage in sustained work-related activities.

Dr. Johns' report also reflects consideration of her own findings. She found moderate impairment in day-to-day activities indicated by plaintiff's inability to engage in any sustained activities or use any persistent concentration. (*Id.*) The mental status examination (MSE) conducted reflects a number of pertinent observations and findings, including mild psychomotor agitation; behavioral distraction with frequent inability to respond to questions regarding personal information and infrequent, hesitant eye contact; flat affect; confused content of thought with evidence of moderate levels of hallucinations; tangential speech, slow-paced, with noticeable latency; moderate impairment of immediate memory, evidenced by inability to complete three-numeral digits span; moderate impairment in concentration, evidenced by unsuccessful serial threes, inability to spell "world" backwards, and difficulty staying focused on conversation; moderate impairment in abstract thinking, evidenced by inability to interpret glass houses proverb; and impaired judgment and insight as a result of distractibility. (AR 267-68.)

The Court, on balance, finds the ALJ's assessment of Dr. Johns' opinion to lack the support of substantial evidence. On remand, the ALJ should clarify any basis for rejecting the GAF score and reassess the opinions as to functional limitations.

B. <u>Dr. Jamie Carter</u>

Dr. Jamie Carter conducted a psychological evaluation of plaintiff in October 2009. Dr. Carter described plaintiff's reporting, including hearing voices, observed his attempt to open the door while another client was being seen despite a "do not disturb" sign and written instructions to remain in the waiting area, and described his presentation as mildly anxious, with restricted affect, poor eye contact, and stammering at times. (AR 285-86.) Plaintiff was unable to recall of one of three objects after a delay, perform two calculations, or spell "world" backwards, gave concrete interpretations of proverbs, and incorrectly responded to a social reasoning question. (AR

286.) Prior psychological evaluations included diagnoses of malingering and schizoaffective disorder, and the current evaluation included the report of auditory hallucinations and symptoms of anxiety and possible post-traumatic stress disorder (PTSD), but not a consistently depressed mood. (AR 286-87.) Plaintiff had deficits on the MSE "but a previous evaluation did raise questions regarding motivational level and possible malingering on those types of tasks." (AR 287.) "He does appear to have longstanding cognitive deficits and reported a childhood head injury and a history of special education." (*Id.*)

Plaintiff initially asserted the ALJ failed to discuss this evidence. However, the ALJ described Dr. Carter's evaluation. (AR 511-12.) The ALJ also noted inconsistency between plaintiff's report to Dr. Carter his mental health symptoms began in his early thirties and his report to Dr. Johns his hallucinations began in his twenties. (AR 512; *see also* AR 267, 286.)

In reply, plaintiff noted the ALJ's failure to discuss his inability to perform serial sevens or threes on examination, or his report of a childhood head injury and history of special education. Plaintiff does not, however, explain how such omissions demonstrate reversible error. *See Turner v. Comm'r of Social Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (where physician's report did not assign any specific limitations or opinions in relation to an ability to work, ALJ need not provide reasons for rejecting the report because the ALJ did not reject any of the report's conclusions); *Morgan*, 169 F.3d at 601 (physician's reports did not show how a claimant's "symptoms translate into specific functional deficits which preclude work activity."); *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (ALJ need not discuss each piece of evidence in the record; ALJ "must explain why 'significant probative evidence has been rejected.'") (quoted source omitted). The ALJ adequately summarized Dr. Carter's evaluation and considered evidence in the record relating to plaintiff's head injuries and history of special education. (*See*

AR 511, 515-16, 520, 523.)  The ALJ also included RFC limitations pertinent to the findings and observations of Dr. Carter, including an ability to remember simple, but not detailed instructions and complete simple, routine tasks in two-hour increments, and the initial need for additional supervision and encouragement.  (AR 509.)  The court finds no error.

C.    Dr. David Morgan

Psychologist Dr. David Morgan evaluated plaintiff in October 2010.  He assessed a GAF of 45, marked limitations in relating to co-workers and supervisors, tolerating pressures and expectations of a work setting, and maintaining appropriate behavior at work, and a severe limitation in public contacts.  (AR 363-64.)  Plaintiff reported medication made his symptoms "not so severe," but did not eliminate them entirely; he did not have psychotic experiences while on medication, but his anxiety symptoms remained.  (AR 364.)  Dr. Morgan stated:  "Client seems to be able to manage his own life in the context of his own home, but other than that, he seems fairly limited.  Client would not necessarily be able to effectively have multiple responsibilities for other individuals at this time."  (*Id*.)  Plaintiff "was somewhat of a poor historian," "appears to depend much on the help of others, and does not seem to have many independent skills that would [unintelligible] to regular employment."  (AR 366.)

The ALJ gave Dr. Morgan's opinion little weight "because it appears to be exclusively based on the claimant's self-reports, and [the] examination notes show the claimant was not forthright with Dr. Morgan."  (AR 518.)  "For example, the claimant reported he did not leave the house except for necessities, such as appointments."  (*Id*.)  The ALJ did not find plaintiff credible, and found Dr. Morgan's opinion "in large parts speculative and couched in equivocal terms."  (*Id*.)

Plaintiff argues that, because Dr. Morgan checked boxes indicating he observed symptoms of anxiety and depression (*see* AR 362), the ALJ erred in finding "exclusive" reliance on self-

reports. However, the remainder of the evaluation (*see* AR 364, 366) supports the ALJ's interpretation. *See Tommasetti,* 533 F.3d at 1041 (physician's records largely reflected claimant's reports of pain "with little independent analysis or diagnosis."). The use of the term "exclusively" is appropriately deemed harmless. *See Molina*, 674 F.3d at 1115 (error harmless where it is "'inconsequential to the ultimate nondisability determination.'"; the court looks to "the record as a whole to determine whether the error alters the outcome of the case.")

Plaintiff denies he incorrectly reported he does not go out into the community much due to his anxiety. However, the ALJ reasonably contrasted this report with other reporting plaintiff went grocery shopping, clothes shopping, and to the gym and food bank (AR 513, 521 (citing AR 344).) *See Tommasetti*, 533 F.3d at 1041 (ALJ may consider inconsistency with the record); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ may consider inconsistency with level of activity). Earlier, the ALJ had identified inconsistency between plaintiff's October 2010 report to Dr. Morgan he had been "clean and sober for over five years" (AR 363), and his May 2009 report to Dr. Lawrence Moore he last used amphetamines "'about two years ago.'" (AR 513, 363, 352.) The inconsistencies identified by the ALJ were particularly relevant given the apparent reliance on plaintiff's reporting.

Finally, the ALJ construed Dr. Morgan's opinion as speculative and couched in equivocal terms. This interpretation was reasonable (*see, e.g.*, AR 364, 366 ("seems to be able", "seems fairly limited", "appears to depend", and "does not seem"; plaintiff had only recently been diagnosed and treated, and his medications were being "changed and monitored" to find the correct combination)), and serves as an additional specific and legitimate reason for assigning little weight to the opinion of Dr. Morgan. *See Rounds v. Comm'r of Social Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (ALJ may "rationally rely on specific imperatives regarding a claimant's

limitations, rather than recommendations."). *Cf.* 20 C.F.R. § 416.945(a) (RFC "is the most you can still do despite your limitations.")

D.    Sue Gebhardt, MA, MHP

Mental health practitioner Sue Gebhardt assessed a GAF of 45 in January 2010. (AR 334-36.) The ALJ noted Gebhardt's observation of several Axis IV factors, including financial and dental needs, and gave little weight to the GAF score "because it is explicitly based on factors having no bearing on the disability analysis. (AR 517.)

As with Dr. Johns, Gebhardt did not "explicitly" base the GAF rating on factors irrelevant to the disability analysis. (AR 334 ("Axis IV:  This consumer has mental health, financial, employment, occupational, medical and dental needs.  Axis V:  GAF 45 (current)").) The GAF score could have been based on clinical observations or findings on examination.  For example, on MSE, plaintiff had difficulty sitting still in his chair, looked down throughout much of the assessment, presented with depressed mood and flat affect, had impaired impulse control, cognition, and memory recall, and was impaired in intelligence and concrete in abstract abilities. (*Id.*) Therefore, while the ALJ's reason for declining to assign value to all of the GAF scores is supported by substantial evidence, clarification is warranted in relation to Gebhardt.

E.    Dr. Daniel Beavers

Dr. Daniel Beavers began treating plaintiff in June 2010 and, at that time, assessed a GAF of 60. (AR 470-71.)  In May 2011, Dr. Beavers assessed a GAF of 50 and described plaintiff's response to treatment as limited and the prognosis as fair.  (AR 472.)  Plaintiff had some restrictions of activities of daily living, with inability to maintain personal grooming or hygiene at times, and difficulty planning activities and initiating and participating in events independent of supervision.  Plaintiff did not pay the bills or usually shop, but occasionally participated in cooking

and used public transportation with assistance. He had difficulties in social functioning, such as responding to authority, avoiding altercations, getting along with others, communicating clearly and effectively, and establishing interpersonal relationships. (AR 473.) His pace was usually slowed, he had difficulty persisting in tasks to completion or in a timely manner, and difficulty concentrating on a repetitive basis. He could deteriorate or decompensate in a work-like setting, with, for example, likely attendance problems, possible threats of violence or inability to cope with a schedule, and difficulty with changes, performance demands, and supervision. He could have difficulty in other areas, such as remembering procedures, responding to supervisors and getting along with co-workers, with simple instructions, maintaining attention for more than two hours at a time, or responding to normal hazards. Dr. Beavers believed plaintiff had a serious mental disorder, occasionally threatens violence, had a limited capacity to modulate his behavior, did best in a calm and predicable environment, and anything disrupting that environment could be destructive and greatly exacerbate symptoms.

The ALJ gave little weight to Dr. Beaver's opinion. She found it speculative, couched largely in equivocal terms, and inconsistent with treatment notes showing generally unremarkable MSEs and no angry or aggressive behavior towards Dr. Beaver or his staff. (AR 518 (citing AR 452-71).) Notably, the treatment records did not show any significant difficulty with communication or significant cognitive deficits. The ALJ construed the opinion as based largely on plaintiff's discredited self-reports. She stated GAF scores represent a snapshot and not a longitudinal history of functioning over time. She gave more weight to Dr. Beaver's treatment notes, which showed general stability on medications, euthymic mood, and only occasional hallucinations.

Plaintiff avers error in the failure to accord proper deference to Dr. Beaver's treating role.

He asserts consistency with the treatment notes and differentiates how he appeared during treatment with how he would behave in a more stressful situation. Plaintiff denies any evidence Dr. Beaver based the opinion on self-reporting, observing the "primary function of medical records is to promote communication and recordkeeping . . . not to provide evidence for disability determinations." *Orn v. Astrue*, 495 F.3d 625, 634 (9th Cir. 2007).

Plaintiff also maintains the ALJ improperly relied on evidence outside the record. The following exchange occurred at hearing:

> ALJ: Okay, so recently I've had experience with Dr. Beavers, so I'm not real excited about Dr. Beavers today. So you probably don't want to tell me about how wonderful he is.
>
> ATTY: Now we're getting a little extrajudicial, though. I mean, if you have something –
>
> ALJ: No I wasn't –
>
> ATTY: – extrajudicial that's –
>
> ALJ: I'm simply saying, you know, I have to use everything that I've got to try and make a decision here, and I do. If I'm raising something extrajudicial, believe me, I will talk about it in my decision.
>
> ATTY: Uh-huh.
>
> ALJ: I haven't made a final decision in this case. All I'm currently telling you is currently Dr. Beavers is not on my hit parade of doctors that – you know, if Dr. Beavers says it's this way, then, you know, I trust the man. I don't totally distrust him, but I'm looking at his assessments with a very careful eye, let us say, today.
>
> ATTY: . . . I mean, if – like you said, if you've learned something about Dr. Beavers, I'd like to be able to rebut it, if I can. If I would – I knew what it was, or --
> ALJ: Well, I haven't – you know, I haven't learned anything more about Dr. Beavers, other than he hasn't become one of the doctors that I can look at and say I 100% trust him to give me an objective opinion.

ATTY: Does he have – I mean, did he get in trouble? Does he have—I mean, he's – it –

ALJ: I'm not going to say anything more. I'm not – I don't want to go – . . . down the rabbit hole here, because I haven't made a decision in this case.

ATTY: Okay.

ALJ: Okay? I was just saying if you're – if you are resting the majority of your case on Dr. Beavers, that might not – that might be a mistake.

(AR 905-07.)

It could be said the ALJ reasonably interpreted Dr. Beaver's opinion as speculative and couched largely in equivocal terms, inconsistent with the treatment notes, and relying in large part on plaintiff's self-reports. The ALJ also accurately described GAF scores as not properly understood to represent a longitudinal picture of functioning over time. *See* AM-13066. However, at hearing, the ALJ made clear she did not fully trust Dr. Beavers to provide an objective opinion due to one or more unrelated matters. The Commissioner contends none of the ALJ's reasons for rejecting Dr. Beaver's opinion relate to the hearing discussion of any extra-record evidence. Given that the ALJ did not state as such in the decision, or even mention the lengthy discussion regarding Dr. Beavers, the basis for the Commissioner's contention is not clear. The Court finds the ALJ's consideration of Dr. Beaver's opinion called into question by the comments made at hearing. The ALJ should reassess Dr. Beaver's opinion on remand and, in so doing, provide clarification as to any and all factors considered in the assessment.

F.    Jessica Spencer, Avery Kennedy, and Michelle Scott

Plaintiff saw several providers at Lifeline Connections. In September 2013, Jessica Spencer, MA, CDP, conducted an MSE and assessed a GAF of 50. (AR 800-03.) On a number

of occasions between September 2013 and November 2014, Avery Kennedy, ARNP, conducted MSEs and assessed GAF scores of 40 or 45.  (AR 804-19.)  In September 2014, Michelle Scott, LMHC, conducted an MSE and assessed a GAF of 50.  (AR 796-99.)

Plaintiff contends the ALJ erred in failing to discuss the significant clinical findings of these providers and by improperly rejecting their GAF scores based on a misunderstanding of Axis IV.  The Commissioner maintains the ALJ provided a reasonable analysis of the GAF scores, as well as the treatment provided by Kennedy.  (*See* AR 514-15, 519, 521.)

The ALJ gave little weight to the Lifeline Connection GAF scores "because the providers offered no explanation regarding what factors (Axis IV) were considered[.]"  (AR 519.)  The ALJ also provided the above-described specific and legitimate reasons for declining to assign value to the GAF scores of record.  (AR 521.)  Whether or not the ALJ appropriately referred to Axis IV, she provided a germane reason for rejecting the Lifeline Connection GAF scores, both as a general matter and based on the failure of these particular sources to provide an explanation for the scores assessed.  *See* AM-13066.

G.    Dr. Todd Bowerly

Consultative examiner Dr. Bowerly first assessed plaintiff in November 2006.  Plaintiff reported a traumatic brain injury (TBI) sustained at age eight and addiction to methamphetamine for the preceding five years, with last use in February 2006.  (AR 479.)  Dr. Bowerly diagnosed cognitive disorder, not otherwise specific (NOS), psychotic disorder, NOS, and amphetamine dependence, early full remission (per self-report), and assessed a GAF of 50.  (AR 483.)  Testing revealed impaired general memory, working memory, processing speed, and attention/ concentration.  (AR 483.)  The cognitive impairment was most likely related to the TBI, with possible influence of chronic back pain and substance use.  (AR 483-84.)  Plaintiff endorsed

situational depression, but not symptoms suggesting an acute mood disorder. (AR 484.) He endorsed hearing voices for the past three or four years, with no diagnosis or treatment. He did not begin hearing voices until after he started using methamphetamine, but continued to hear them once or twice a week in eight or nine months of abstinence. Dr. Bowerly recommended a comprehensive neuropsychological evaluation, further psychological evaluation based on "unreliable self-report," and deferred diagnosis of antisocial personality-based difficulties given the possible contribution of cognitive impairment and psychosis on legal, substance, anger, and behavior problems. (*Id.*) He found plaintiff unable to manage finances secondary to cognitive impairment, with adequate persistence and social interaction skills, and limited understanding, reasoning, attention/concentration, memory, and adaptation abilities secondary to multiple factors, including past TBI, substance abuse, and chronic pain. (AR 484-85.)

In an April 2015 examination, Dr. Bowerly noted plaintiff was a poor historian, offered vague information, presented as simple and concrete, with a flat, restricted affect, but no indication of an acute mood disorder, had generally clear and linear thinking, no observable hallucinations or delusions, and poor performance on all tests of cognitive functioning. (AR 843-44.) The testing results revealed invalid scores underestimating actual functioning "secondary to poor effort, some likely feigned behavior on very easy tasks, and stuporous behavior towards the end of the exam." (AR 846.) Plaintiff provided inconsistent details about his personal information compared to the 2006 evaluation and withheld truthful information about his history of using substances, specifically methamphetamine. Dr. Bowerly assessed a GAF of 65, did not offer a medical source statement given the lack of reliable information, and opined malingering should be ruled out. (AR 845-46.)

The ALJ gave little weight to the 2006 opinion because it predated the relevant time period

by several years and the record suggested plaintiff may have been using methamphetamine at that time. (AR 519.) In describing the 2015 opinion, the ALJ noted Dr. Bowerly's reference to Dr. Moore's "alleged assessment of malingering" in 2005, and stated she disregarded that reference because the record did not contain any 2005 examination or opinion from Dr. Moore. (AR 515 at n.2.)[7] She gave little weight to the GAF score assessed in 2015 "because it was based on factors having no bearing on the disability analysis, including homelessness and financial concerns." (AR 521.)

Plaintiff contends Dr. Bowerly's opinion is tainted by his review of Dr. Moore's May 2009 evaluation, which referenced the 2005 evaluation in which Dr. Moore allegedly diagnosed malingering. He avers error in the ALJ's reliance on an opinion based, in part, on evidence that is not a part of the record, and that the ALJ's "disregarding" of the reference does not change the fact Dr. Bowerly improperly relied on missing evidence.

The Court finds no error. In remanding the matter to an ALJ, the Appeals Council pointed to a citation to Dr. Moore's 2005 evaluation, completed in connection with a prior disability claim, dated outside the period at issue in this case ("from October 5, 2009 forward"), and not contained in the record. (AR 643-44.) Consistent with the stipulated remand, the Appeals Council directed

_____

[7] The record does contain a May 2009 evaluation from Dr. Moore. (AR 351-57.) The ALJ stated that, in accordance with the remand order, she disregarded all portions of Dr. Moore's 2009 evaluation based on the alleged 2005 evaluation. (AR 510 at n.1.) In 2009, Dr. Moore did not offer a formal MSE score in light of plaintiff's questionable effort, particularly on questions of orientation, found all other tasks performed well within normal limits, and no clear indication of cognitive deficits. (AR 357.) Plaintiff was able to keep up with activities of daily living and offered no particular functional complaints. Dr. Moore opined plaintiff appeared able to reason, understand, remember, concentrate, persist in activities, adapt to new situations, and interact socially without significant difficulty. The ALJ gave great weight to Dr. Moore's conclusion plaintiff did not put forth good effort on examination suggestive of malingering, but little weight to the opinion plaintiff did not have significant difficulties. (AR 517.) Based on complaints of irritability, fatigue, mood lability, and occasional hallucinations, the ALJ gave more weight to the opinions of non-examining Stage agency consultants. Plaintiff does not challenge the ALJ's consideration of Dr. Moore's 2009 opinion.

that any evidence from a prior claim relied upon must be made a part of the record and proffered to the claimant. (AR 645 and 632-33.) The ALJ complied with this directive by disregarding any reference by Dr. Bowerly to evidence not contained in the record.

Plaintiff does not support the contention Dr. Bowerly based his opinion on missing evidence, or that the ALJ was obligated to disregard this or any other opinion referencing Dr. Moore's 2005 evaluation. Dr. Bowerly noted both the 2005 and 2009 evaluations of Dr. Moore only in the initial portion of his 2015 evaluation, outlining plaintiff's complaints and the records reviewed. (AR 841.) Dr. Bowerly rendered his opinion based on "currently authorized objective testing", the examination, and as to "current or recent functioning." (AR 841-46.) His opinion "rests on his own independent examination" and properly serves as substantial evidence supporting the ALJ's conclusion. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

H.    Dr. Landon Poppleton

Consultative examiner Dr. Landon Poppleton assessed plaintiff over the course of several days in December 2014/January 2015. (AR 828-37.) Dr. Poppleton found plaintiff met the criteria for alcohol use disorder and mild neurocognitive disorder due to TBI, noting global cognitive delay and functioning in the first percentile relative to other adults his age. (AR 836.) Plaintiff also presented consistent with major depressive disorder with psychotic features, with relevant symptoms reported, psychomotor slowing and fatigue, difficulty managing his anger/often acting out violently, and auditory and command hallucinations. Testing showed markedly impaired memory, and monthly MSE scores showed fluctuating neurocognitive impairments, most likely explained by distracting auditory hallucinations. Dr. Poppleton opined plaintiff could benefit from continued treatment. (AR 836-37.) Also, responding to questions from counsel, Dr. Poppleton opined plaintiff was disabled and that his other impairments would not likely improve to the point

of non-disability absent the use of substances. (AR 838-39.)

The ALJ gave little weight to the IQ scores and memory test results from Dr. Poppleton in light of Dr. Bowerly's 2015 examination findings. (AR 520.) She gave very little weight to the opinion and examination findings overall, finding plaintiff's reports to Dr. Poppleton very different from his testimony at hearing and his reports to other providers. "For example, he reported to Dr. Poppleton that he became lost taking local transit, however, at the hearing, he explained that he was able to take public transportation without any trouble at all." (*Id.*) Plaintiff also reported to Dr. Poppleton his hallucinations began in adolescence, while elsewhere reporting they began in his twenties, thirties, and in the context of past methamphetamine use.

Plaintiff asserts improper reliance on Dr. Bowerly's allegedly tainted opinion. This argument fails for the reasons stated above. Plaintiff states his report and testimony about riding the bus are not "*very* different[.]" (Dkt. 26 at 11 (emphasis retained).) The ALJ reasonably found inconsistency. (*Compare* AR 829 ("According to Jeffrey his case manager accompanies him when she can but he sometimes has to ride [the bus] alone. He reported he is comfortable riding the bus locally using major streets but otherwise cannot recall directions. He and Brenda admitted that he sometimes gets lots even locally and will have to call her for assistance."), *with* AR 937 ("Q[.] Do you ever have problems taking the bus? A[.] No. Q[.] You always know exactly where you're going, you get there okay[.] A[.] Yeah.")) Plaintiff also states he specifically reported to Dr. Poppleton he had auditory hallucinations "for a while . . . about 15 years I think[,]" and, upon further questioning, "recalled that the voices 'were always there sometimes' since he was a teenager." (AR 831.) The ALJ reasonably found inconsistency in plaintiff's reporting to Dr. Poppleton and to other sources throughout the record. (*See, e.g.*, AR 266 (mental health symptoms began in early thirties), 286 (began hearing voices in his twenties), 479, 484 (2006 report of hearing

voices for past three or four years), 879, 882 (September 2015 report of hearing voices for past fifteen years).)  The ALJ, in sum, provided specific and legitimate reasons for discounting the opinion of Dr. Poppleton.

I.      Dr. Conrad Swartz and Lizz Schallert, MSW, CSWA

        On September 23, 2015, mental health practitioner Lizz Schallert found plaintiff impaired in multiple respects on MSE and assigned a GAF of 30.  (AR 879-86.)  On October 14, 2015, examining psychiatrist Dr. Conrad Swartz found plaintiff had "extremely concrete mentation, simple approach, not able to handle complexity, barely able to handle simple questions" and impaired in several respects on MSE, and diagnosed PTSD and cognitive impairment/psychosis/ dysexecutive syndrome due to TBI, psychosis.  (AR 870-77.)  In a progress note from that same month, Dr. Swartz addressed Dr. Bowerly's 2015 examination and interpreted the observations of drowsiness and somnolence to indicate plaintiff was obtunded during testing, and this "may have been sedation by medication," or "delirium associated with [TBI], e.g., nonconvulsive seizure activity."  (AR 889.)  He further stated:  "The psychologist wrote a different interpretation (feigning) that is more speculative than medication or delirium effects, and I do not endorse it." (AR 889-90.)  In a October 23, 2015 letter, Schallert stated plaintiff "is a perfect candidate for SSI", "has no other option for income, and his disability impacts all levels of day to day functioning."  (AR 891.)  She described plaintiff's symptoms as persistent and serious, his experience of high levels of anxiety and "hearing voices for most of his adult life[,]" his inability to concentrate on a single task, communicate and form sentences clearly, or remember very basic information, and stated these "symptoms impair him from working."  (*Id*.)  Schallert also stated that, because of severe impairment of organizational skills, plaintiff relies heavily on his girlfriend to meet his basic needs, "is appropriate for disability support, and I advocate for his receiving SSI."

(*Id.*)

The ALJ gave little weight to Dr. Swartz's opinion of Dr. Bowerly's observations.  It failed to take into account other factors considered by Dr. Bowerly, such as inconsistent statements made between Dr. Bowerly's 2006 and 2015 examinations, plaintiff's failure to report his history of methamphetamine abuse at the 2015 examination, and his inconsistent performance on examination, including erring on simple tasks, while accurately answering more difficult questions testing the same skill.  (AR 520.)  The ALJ also found it notable no other source had assessed plaintiff with delirium associated with a TBI.

In challenging the ALJ's analysis, plaintiff reiterates the contention that Dr. Bowerly's examination was tainted.  This argument fails for the reasons stated above.

Nor did the ALJ otherwise err in considering the evidence from Dr. Swartz.  "The ALJ is responsible for resolving conflicts in the medical record." *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1164 (9th Cir. 2008).  When evidence reasonably supports either confirming or reversing the ALJ's decision, the court may not substitute its judgment for that of the ALJ.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."  *Morgan*, 169 F.3d at 599.  The ALJ here appropriately relied on contrary evidence from Dr. Bowerly and Dr. Swartz's failure to consider all of the factors considered by Dr. Bowerly, as well as the absence of any other assessment of delirium.  *Id.* at 603 (ALJ may consider inconsistencies within and between physicians' reports); *Tommasetti*, 533 F.3d at 1041 (ALJ may consider inconsistency with the record); 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight [the ALJ] will give to that medical opinion.").

The ALJ assigned little weight to Schallert's GAF score and letter.  The score appeared to

be based primarily or exclusively on plaintiff's report "he had hallucinations 'all the time,'" and they "told him to 'hurt people.'"   (AR 520.)   This was "wildly different" from every other description in the record, which generally showed hallucinations as only occasional, deprecating, and negative.   (*Id*.)   The ALJ also found the opinions in the letter to show exclusive reliance on plaintiff's self-reports, noting no indication Schallert reviewed the treatment record or consultative evaluations, or performed any testing.   The ALJ found inconsistency with the treatment record, including Dr. Beaver's treatment notes and Dr. Ramsthel's examination findings, which did not show any difficulty with communication, and further found inconsistency with plaintiff's ability to testify clearly at both remand hearings.

Plaintiff counters that Schallert was able to rely on both her own findings and the findings of Dr. Swartz.   However, the ALJ rationally interpreted the evidence to show the reliance on plaintiff's self-reports and inconsistency with the record, and bolstered her conclusions with specific examples.   The ALJ also reasonably considered the absence of evidence Schallert was familiar with the remainder of the record.   *See* 20 C.F.R. § 416.927(c)(6) (ALJ may consider extent to which a source is familiar with other information in the record).   The ALJ, as such, properly considered the opinion evidence from both Schallert and Dr. Swartz.

J.      Dr. Xiaotian Yan

Plaintiff describes treatment records from primary care provider Dr. Xiaotian Yan and argues the ALJ erred by failing to acknowledge this evidence is consistent with the opinions of his other treatment providers and examiners.   The ALJ considered the evidence from Dr. Yan (AR 512-14), and the record did not contain a medical opinion from Dr. Yan requiring assessment. *Turner*, 613 F.3d at 1223 (ALJ need not provide reasons to reject physician's statement when statement did not assess any limitations).   While plaintiff takes a different view of Dr. Yan's

treatment records and the impact on the ALJ's analysis, he fails to demonstrate the ALJ's interpretation was not rational.

K.    Dr. Donald Ramsthel:

Dr. Ramsthel examined plaintiff in June 2009 and rendered opinions on physical functioning consistent with the RFC. (AR 284.) The ALJ gave the opinion great weight, finding consistency with Dr. Ramsthel's examination findings and the record as a whole, including minimal findings on MRI and intact strength on examination. (AR 516.)

Plaintiff avers more recent records show his physical impairments became more severe over time. However, the records cited by plaintiff do not undermine either the ALJ's consideration of Dr. Ramsthel's report or the physical limitations in the RFC. (*See* AR 390-91, 394-95, 434-36, 446 (finding tenderness on back in January 2010, April 2010, and January 2011); AR 407-08 (finger pain in September 2010, following injury to finger three days prior (*see* AR 416)); AR 427-28 (tenderness below right knee cap in June 2010); and AR 429-30 (June 2010 physical therapy evaluation finding, *inter alia*, no neurological deficits, normal joint mobility, lumbar pain/tenderness, unable to perform double leg squat, and able to walk on heals and toe walk).) The ALJ's rational interpretation of the evidence will not be disturbed.

L.    Non-examining Physicians

In January 2010, non-examining Stage agency psychiatric consultant Dr. Richard Winslow rendered opinions consistent with the RFC. (AR 314.) In March 2010, psychological consultant Dr. Carla van Dam agreed with Dr. Winslow. (AR 347.) The ALJ gave great weight to these opinions, finding consistency with the record as a whole, including plaintiff's testimony, Dr. Beaver's treatment notes showing plaintiff's mood as generally euthymic and his hallucinations described as occasional, and evidence showing plaintiff is able to follow television programs and

engages in yard work/landscaping in exchange for rent.  (AR 517.)  The ALJ gave little weight to the opinion plaintiff might have difficulty with public transportation in light of his testimony to the contrary.

Plaintiff argues the opinions of Drs. Winslow and van Dam are entitled to little weight because they did not review any evidence beyond March 2010.  The ALJ was tasked with considering plaintiff's claim of disability as of October 5, 2009 and properly considered and reasonably weighed these relevant medical opinions.  Plaintiff does not establish error in the ALJ's consideration of the opinions of Drs. Winslow and van Dam.

<u>Plaintiff's Symptom Testimony</u>

Absent evidence of malingering, an ALJ must provide specific, clear, and convincing reasons to reject a claimant's testimony.[8]  *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina*, 674 F.3d at 1112).  *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834.  The ALJ may consider a claimant's "reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains."  *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ here found plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms not entirely credible.  The ALJ found plaintiff's symptoms

---

[8] In SSR 16-3p, the SSA rescinded SSR 96-7p, eliminated the term "credibility" from its sub-regulatory policy, clarified that "subjective symptom evaluation is not an examination of an individual's character[,]" and indicated it would more "more closely follow [its] regulatory language regarding symptom evaluation."  SSR 16-3p.  However, this change is effective March 28, 2016 and not applicable to the December 10, 2015 ALJ decision in this case.  The Court, moreover, continues to cite to relevant case law utilizing the term credibility.

disproportionate to the objective and clinical findings. (AR 510-16.) She found the record to suggest plaintiff's unemployment was due to the inability to find a baking job and lack of motivation to search for a job. (AR 521.) The ALJ identified inconsistencies in plaintiff's reporting regarding his use of illicit substances, between his symptoms and activities of daily living, in his different accounts as to when he began to experience hallucinations, and in his presentation to providers depending on whether the examination regarded his physical or mental complaints. (AR 521-22.) The ALJ noted plaintiff's failure to consistently complain about hallucinations, and discussed evidence from examiners of poor effort or feigned poor performance, and vagueness in presenting history, including legal and substance use history. (AR 522.) She described plaintiff's treatment as exceedingly conservative in nature, with his symptoms managed with medication. She also noted plaintiff did not seek or receive mental health treatment for large parts of the relevant time period, despite access to medical care, including the absence of any mental health treatment between September 2011 and September 2013. Finally, the ALJ pointed to plaintiff's "generally unpersuasive appearance and demeanor" during his testimony at hearing, stating he displayed no evidence of pain or discomfort and no apparent difficulty understanding or responding to questions. (*Id*.) The ALJ emphasized that this observation was only one of many factors relied upon, but was entitled to some weight.

The need for further consideration of medical evidence may implicate the assessment of symptom testimony. The ALJ should reconsider plaintiff's testimony as warranted on remand. However, the Court otherwise finds specific, clear, and convincing reasons provided in support of the ALJ's assessment of plaintiff's symptom testimony. *See Rollins*, 261 F.3d at 857 (subjective testimony cannot be rejected *solely* on the ground it is not fully corroborated by objective medical evidence, but "medical evidence is still a relevant factor in determining the severity of the

claimant's pain and its disabling effects."), and *Carmickle*, 533 F.3d at 1161 (ALJ may reject claimant's subjective testimony based on contradiction with the medical record); *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (ALJ may consider reason why a claimant stopped working), and *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-67 (9th Cir. 2001) (ALJ may consider evidence of self-limitation and lack of motivation); *Bray v. Comm'r of SSA*, 554 F.3d 1219 (9th Cir. 2009) (". . . ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors."); *see also Tommasetti*, 533 F.3d at 1039 (inconsistent statements), *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistent statements regarding alcohol use), *Orn*, 495 F.3d at 639  (inconsistency with activities), and *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (inconsistent or non-existent reporting of symptoms); *Thomas*, 278 F.3d at 959 (self-limiting behavior, failure to give maximum or consistent effort, or efforts to impede accurate testing provide compelling evidence detracting from subjective symptom testimony); *Tommasetti*, 533 F.3d at 1039-40 (ALJ may also consider evidence a claimant was vague in providing information or explanations, favorable response to conservative treatment, and unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment); and *Orn*, 495 F.3d at 639-40 (ALJ's personal observations may be used as a part of the overall evaluation of a claimant's symptom testimony).[9]

*/ / /*

---

[9] An ALJ may not employ a "'sit and squirm'" test and reject a claimant's symptom testimony based solely on the failure to exhibit alleged symptoms at hearing. *Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985). However, the inclusion of an ALJ's observations does not render the decision improper. *See Verduzco*, 188 F.3d at 1090. Personal observations may be included as part of the overall evaluation, *Orn*, 495 F.3d at 639-40, but should not be "used as a substitute for medical diagnosis." *Marcia v. Sullivan*, 900 F.2d 172, 177, n.6 (9th Cir. 1990) (cited sources omitted). *See, e.g.*, *Verduzco*, 188 F.3d at 1090 (claimant exhibited symptoms inconsistent with both the medical evidence and other behavior at hearing); *Quang Van Han v. Bowen*, 882 F.2d 1453, 1458 & n.8 (9th Cir. 1989) (claimant was "overdramatizing" alleged pain by "dishonestly attempting to display too *much* pain."). In this case, the ALJ appeared to properly consider her personal observations as only one of many different factors.

<u>RFC and Step Five</u>

The ALJ's RFC assessment and step five conclusion may be implicated by further

consideration of medical evidence. The ALJ should, as warranted on remand, reconsider

plaintiff's claim at step four and step five.

## **CONCLUSION**

For the reasons set forth above, this matter is REMANDED for further administrative

proceedings.

DATED this <u>22nd</u> day of November, 2017.

Mary Alice Theiler
United States Magistrate Judge